UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANNY TABB,

        Plaintiff,

   v.

KENNETH QUINN, *et al.*,

        Defendants.

Case No. C06-5111 RBL/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:**
**May 11, 2007**

    This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff is a former Washington State inmate who filed this 42 U.S.C. § 1983 civil rights action while he was incarcerated, alleging that Defendants violated the Americans with Disabilities Act (ADA) by failing to provide him with a hearing aid and/or a text pager. Before the Court is the motion for summary judgment of Defendants Superintendent Kenneth Quinn (Quinn) and Monroe Correctional Complex (MCC) Nurse Practitioner Margie Sanford (Sandford). (Dkt. # 24). Plaintiff has filed no opposition to the motion. The Court may view such failure as an admission that the motion has merit. CR 7(b)(2).

    After careful review of Defendants' motion and balance of the record, the undersigned

REPORT AND RECOMMENDATION -1

recommends that the Court grant summary judgment in favor of Defendants and that Plaintiff's claims against them be dismissed with prejudice.

## I. STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed. Defendant Sanford was employed as a Correctional Healthcare Specialist 2 (CHCS2) at the MCC Minimum Security Unit (MSU) from 2001 until her retirement in January 2007. (Dkt. # 24, Exh. 1 at ¶ 1). Defendant Sanford is licensed as an Advanced Registered Nurse Practitioner (ARNP) and as a Registered Nurse by the State of Washington Department of Health. (*Id*. at ¶ 2).

Plaintiff, (DOC) #806878, was transferred to MCC-MSU in early November 2005 from the Washington Corrections Center. (*Id*. at ¶ 5). Plaintiff complained to medical staff at MCC-MSU about a problem with his hearing and was given a hearing test (audiogram) on November 4, 2005, which revealed that Plaintiff had normal hearing in his right ear and moderate hearing loss in his left ear. (*Id*.).

During a period of time in November 2005 when Defendant Sanford was absent from MCC-MSU, one of the Physicians Assistants at MCC-MSU issued a Health Status Report (HSR) to Plaintiff that allowed him to have a pager. (*Id*. at ¶ 6). When Defendant Sanford returned to work she discussed this issue with Holly Delcambre who is in charge of hearing impairment issues at MCC. They both agreed that Plaintiff was not entitled to a pager or a hearing aid and Defendant Sanford then rescinded the HSR for a pager. (*Id*.).

Under DOC policy, inmates who have normal hearing in one ear are generally not eligible for a hearing aid or pager. Medical staff can override this policy only if there is evidence that the inmate needs a pager or hearing aid in order to assist him in the activities of daily living (ADL), or in programming in the institution. (*Id.*).

In her personal dealings with Plaintiff, he never showed Defendant Sanford even the slightest inability to communicate with her verbally or the inability to hear and understand everything she told him at a normal tone of voice, even when she was not facing Plaintiff. Plaintiff never told Defendant

REPORT AND RECOMMENDATION -2

Sanford that he was unable to perform any task, ADL, or programming in the institution as a result of the moderate hearing loss in his left ear. (*Id*. at ¶ 7). Defendant Sanford also never received any reports from staff or saw any evidence that Plaintiff's moderate hearing loss in one ear caused him any difficulty in carrying out his ADLs and programming in the institution. (*Id*.). Plaintiff told Defendant Sanford he was having difficulty hearing the overhead pager (public address system). Plaintiff did not tell Defendant Sanford that he was missing meals, yard, or callouts due to his moderate hearing loss in one ear and she saw no evidence or reports to that effect. By all indications Plaintiff functioned normally and without hindrance in spite of his moderate hearing loss in one ear. (*Id*.)

Plaintiff filed a grievance over not getting a pager and/or hearing aid, Grievance No. 05-27408. At all three levels of this grievance, Plaintiff never asserted that he was missing meals, missing yard, or missing callouts. (*Id* at ¶ 8).

A medical care review committee (CRC) was held on December 14, 2006 to review whether there was any medical necessity to provide Plaintiff a hearing aid for his left ear or a pager. This committee consisted of numerous medical staff from DOC prisons across the state. The CRC committee concluded that there was no medical reason to provide Plaintiff with a hearing aid or a pager. (*Id*. at ¶ 9)

Defendant Sanford was not personally involved in decisions by institution staff to allow or deny Plaintiff the use of a TTY/TDD machine to make calls out of the institution. (*Id*. at ¶ 10). There was no reason why Plaintiff would need to use a TTY/TDD machine as he has normal hearing in his right ear and should therefore be able to use a regular telephone. (*Id*.).

Defendant Quinn is employed by the Washington State DOC as the Superintendent of the MCC, in Monroe, Washington. Defendant Quinn has held this position since August 1, 2005 and has worked in corrections for over nineteen years. (*Id*., Exh. 2).

Under DOC's Offender Grievance Program, grievances have three levels; level I, II, and III. Routine grievances start at level I and can be appealed to levels II and III. Staff misconduct grievances start at level II and can be appealed to level III. All level II grievances are decided by the

REPORT AND RECOMMENDATION -3

1  superintendent or his or her designee. Most level II grievances at MCC are decided and signed by
2  Defendant Quinn's designees and not by Defendant Quinn. (*Id.*).

3  Plaintiff filed a grievance in November 2005 because medical staff at MCC indicated to him
4  that he was ineligible to receive a hearing aid and/or a pager. This grievance was assigned DOC
5  grievance No. 05-27408. This was a routine level I grievance which was decided and signed by a
6  MCC grievance coordinator. Plaintiff appealed the level I denial of his grievance to level II. The level
7  II appeal was decided by Defendant Quinn's designee, Associate Superintendent Carol
8  Grandmontagne. Plaintiff appealed the level II response to level III and this appeal was denied by the
9  DOC Grievance Program Manager Dean Mason. (*Id.*).

10 Defendant Quinn was not involved in deciding and responding to Plaintiff's grievance No.
11 05-27408. Defendant Quinn was also not involved in any way in the decisions by medical staff
12 concerning Plaintiff's hearing problems and his requests for a hearing aid and/or a pager. Defendant
13 Quinn was first made aware of Plaintiff's complaints concerning a hearing aid and a pager when he
14 was served with this lawsuit. (*Id.*).

15 Plaintiff does not presently use a hearing aid and has never used a hearing aid.  (*Id.*, Exh. 3,
16 Attach. A at 56).

17 Plaintiff has worked for Papa John's for approximately four months. Plaintiff's job duties
18 include taking pizzas out of the oven, preparing food, answering the phone, stocking shelves,
19 driving, delivering pizzas, and communicating with customers. Plaintiff's hearing impairment has not
20 limited his ability to perform all the required duties of his job at Papa John's. (*Id.* at 44-47).

21 Plaintiff has worked at a cement plant since his release from prison and his hearing
22 impairment did not keep him from being able to perform all the duties of this job.  (*Id.* at 48-49).

23 Plaintiff is currently involved in drug and alcohol counseling in a classroom setting and his
24 hearing impairment does not prevent him from fully participating in this counseling. (*Id.* at 52-53).
25 Plaintiff is a licensed driver and his hearing impairment does not prevent him from driving.  (*Id.* at
26 53-54).

27

28 REPORT AND RECOMMENDATION -4

Plaintiff uses a cell phone "all day" without problems. (*Id*. at 54). The only limitations Plaintiff has from his hearing impairment are being able to have normal conversations in a loud setting, occasional difficulties with phone conversations, and having to turn his radio up loud. (*Id*. at 55). Plaintiff has successfully held jobs in prison and successfully engaged in prison programming such as stress/anger management , victims awareness, and the GED program in spite of his moderate hearing impairment. (*Id*. at 51-52).

Plaintiff did not miss any yard time or medical appointments at MCC as a consequence of his moderate hearing impairment. (*Id*. at 64-65). Plaintiff testified that he missed some breakfasts at MCC because he had difficulty hearing the MCC PA system. However, Plaintiff admitted that non-hearing impaired inmates also had difficulty hearing and understanding the PA system at MCC. Plaintiff also admitted that on many occasions he was awakened for breakfast by correctional officers, his cellmates, or other inmates. (*Id*. at 57-59, 65-69, 81). Alarm clocks are allowed at MCC. Plaintiff has conceded that if he had an alarm clock he would not have missed breakfasts at MCC. Plaintiff did not request an alarm clock from anyone at MCC, including Defendants Quinn and Sanford. (*Id*. at 60).

Plaintiff admitted that he has consistently lied to prison officials to avoid getting into trouble. Plaintiff has also admitted that he was not truthful to prison officials or this Court concerning his parents' deafness as his parents are not deaf, only his girlfriend's parents are deaf. (*Id*. at 72-76, 80).

## II. DISCUSSION

**A.     Standard of Review**

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1985).

REPORT AND RECOMMENDATION -5

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. *Id.*

**B.     Plaintiff Has No Claim Under the Americans With Disabilities Act Against the Individual Defendants**

Plaintiff has sued Defendants for violations of the ADA. Title II of the ADA prohibits public agencies from discriminating against disabled persons in the provision of public programs and services. Whether Plaintiff is suing the Defendants directly under the ADA or under 42 U.S.C. § 1983, Plaintiff's ADA complaint against the individual Defendants in this case must be dismissed, because Title II does not create or allow a cause of action against individual government officials.

Title II of the ADA provides that:

> No qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

"Public entity" means "any State or local government" and "any department, agency,

REPORT AND RECOMMENDATION -6

special purpose district, or other instrumentality of a State or States or local government". 42 U.S.C. § 12131.

By the plain language of its terms, Title II of the ADA does not create or allow a cause of action against individual government officials. *Vinson v. Thomas,* 288 F.3d 1145 (9th Cir. 2002). Nor may a plaintiff sue the individual defendants under § 1983. *Id*. However, individuals may be sued under the ADA in their official capacities under the *Ex Parte Young* doctrine but only for injunctive relief. *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187 (9th Cir. 2003); *Armstrong v. Davis*, 275 F.3d 849, 879 (9th Cir. 2001).

Although Plaintiff seeks injunctive relief (*See* Dkt. # 6 at 9), that claim is now moot because Plaintiff is no longer incarcerated. (*See* Dkt. # 21 and discussion below). Because Plaintiff does not have any viable claims for relief against the individual Defendants in this case under the ADA or under 42 U.S.C. § 1983, the undersigned recommends that Defendants' motion for summary judgment be granted on this basis.

**C.  Plaintiff is Not Disabled for Purposes of the ADA**

The ADA defines a disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

A court considering whether a person is disabled under the ADA must make three inquiries: (1) whether the plaintiff has a physical impairment; (2) whether the life activity identified by the plaintiff is a major life activity, and (3) whether the impairment substantially limits the major life activity. *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir. 2003). In determining whether an impairment is substantially limiting, the court must look at the "nature, severity, duration, and impact", of the impairment. *Id.*, at 1039. Whether a person is disabled under the ADA is an

REPORT AND RECOMMENDATION -7

1  individualized inquiry. *Id.* "Substantially limits" has been defined by regulations as "unable to
2  perform" or "significantly restricted." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 491 (1999)
3  (citing to 29 C.F.R. § 1630.2(j)).

4      Defendants do not dispute that Plaintiff has a moderate hearing impairment in his left ear.
5  (Dkt. # 24, Exh. 1, Attach. A). Nor do Defendants dispute that hearing is a major life activity
6  under the ADA. *Fraser v. Goodale, supra,* (citing 45 C.F.R. § 84.3 (j)(2)(ii) and 29 C.F.R. §
7  1630.2(i)). Defendants dispute that Plaintiff's moderate hearing **i**mpairment in one ear substantially
8  limits his ability to hear or engage in any other major life activity such that Plaintiff is considered
9  disabled under the ADA. The undisputed facts indicate the following:

> Plaintiff has normal hearing in his right ear and a "moderate" loss of hearing in his left ear. (Dkt. # 26, Exh. 1). Plaintiff concedes he has normal hearing in his right ear and estimates a 60% loss of hearing in his left ear. (*Id.*, Exh. 3, Attach. A at 71). Plaintiff also concedes that he does not presently use a hearing aid and has never used a hearing aid. (*Id.* at 56). Plaintiff has testified that he essentially functions normally at the present in spite of his moderate hearing impairment in one ear. Upon his release from prison Plaintiff worked at a cement plant and his hearing impairment did not cause him any problems in this job. (*Id.* at 48-49). Plaintiff has worked for Papa John's for approximately the last four months and his hearing impairment has not affected his ability to do this job. (*Id.* at 44-47). Plaintiff's job duties at Papa John's include taking pizzas out of the oven, prepping food, answering phones, stocking shelves, driving, delivering pizzas, and communicating with customers. (*Id.*).
>
> Plaintiff is also currently involved in drug and alcohol counseling in a classroom setting and his hearing impairment does not prevent him from fully participating in this counseling. (*Id.* at 52-53). Plaintiff is a licensed driver and his hearing impairment does not prevent him from driving. (*Id.* at pp. 53-54). Plaintiff uses a cell phone "all day" without problems. (*Id.* at 54-55). Finally, Plaintiff concedes that he has only experienced minor problems as a result of his hearing impairment:
>
> Q.   Okay. It is a fair statement that your hearing impairment does not prevent you from leading a normal life?
>
> A.   No, I wouldn't say that.
>
> Q.   Okay. Tell me how it prevents you from leading a normal life?
>
> A.   How? Being able to have a normal conversation in a loud setting where others can. Having difficulty hearing when I am on the phone at some points in time depending on the surrounding I'm in, you know.
>
> Q.   Anything else that you can think of.

REPORT AND RECOMMENDATION -8

> A. Having to have my radio turned up loud, so I can hear what - - what's coming over the speakers.
>
> (BRIEF DISCUSSION OFF THE RECORD)
>
> (BACK ON THE RECORD)
>
> Q. (By Mr. Carr) Other than that, is there anything that you cannot do because of your hearing problem?
>
> A. Not that I can think of, no.

(*Id.* at 55).

Plaintiff's institutional history within DOC also demonstrates that Plaintiff's hearing impairment has not substantially limited his ability to engage in major life activities. Plaintiff has had several prison jobs and had no problems performing such jobs. (*Id.* at 50). Plaintiff also engaged in and successfully completed a number of prison programs, including stress/anger management, victims awareness, and the GED program. (*Id.* at 51). Plaintiff concedes he made numerous phone calls on a regular phone while in prison (*Id.* at p. 62). Plaintiff concedes that he did not miss any yard opportunities or medical appointments while at MCC as a result of his hearing impairment (*Id.* at 64-65).

The only detriment alleged by Plaintiff is missing breakfast at MCC on occasion as a result of not being able to hear the public address (PA) system. (*Id.* at 67). However, Plaintiff concedes that all inmates had trouble hearing and understanding the PA system at MCC. (*Id.* at 57, 63). Plaintiff also concedes that on many occasions correctional officers, cellmates, or other inmates at MCC would wake him up for breakfast. (*Id.* at 57-59, 65-69, 81). Finally, Plaintiff has conceded that all he needed to wake up for breakfast was an alarm clock and that alarm clocks are allowed in prison. (*Id.* at 60). Plaintiff has also testified that he never specifically asked for an alarm clock and that he only made a generalized request to Holly Delcambre for "some sort of assistive device." (*Id.*).

Based on the undisputed evidence presented, the undersigned concludes that Plaintiff cannot meet his burden of showing that he is disabled under the ADA by showing the moderate hearing loss in one ear. Viewing all the evidence in Plaintiff's favor, it is clear that Plaintiff's hearing impairment did not substantially limit any major life activity and therefore, Plaintiff's ADA claim should be dismissed as a matter of law.

**D.  Defendant Quinn Must Be Dismissed As He Did Not Violate Plaintiff's Rights Under the ADA**

Under the ADA a plaintiff may not obtain monetary damages against a defendant in the

REPORT AND RECOMMENDATION -9

absence of evidence showing the defendant intentionally discriminated against the plaintiff. *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001). Defendants argue that the summary judgment evidence indicates that Defendant Quinn had no involvement in deciding and denying Plaintiff's request for a hearing aid and pager. (Dkt. # 24, Exh. 1, 2).

Because the undersigned concludes that Plaintiff has not met his burden of showing that he is disabled under the ADA, the Court need not reach the issue of whether Defendant Quinn violated Plaintiff's rights under the ADA.

**E.     Defendant Sandford Did Not Intentionally Violate Plaintiff's Rights Under the ADA**

In either an ADA claim or a claim under Section 503 of the Rehabilitation Act of 1973, a plaintiff must demonstrate that discrimination or denial of benefits occurred because of the plaintiff's disability. *Weinreich v. Los Angeles County*, 114 F.3d 976, 978 (9th Cir. 1997). In addition, the plaintiff must prove intentional discrimination on the part of the defendant. *Duvall*, 260 F.3d at 1138. Defendants argue that the undisputed summary judgment evidence proves that Defendant Sandford did not intentionally violate Plaintiff's rights under the ADA as she was never aware that Plaintiff missed missed meals, yard, or appointments as a result of his alleged inability to hear the MCC PA system. (Dkt. # 24, Exh. 1). In addition, at all three levels of his grievance concerning a hearing aid and a pager, Plaintiff did not indicate to prison officials that he had missed meals, yard, or appointments. (*Id*.). In fact, Plaintiff never alleged any harm resulting from his moderate hearing impairment.  Finally, Defendant Sanford argues that she was following a reasonable DOC policy by refusing to allow Plaintiff to have a hearing aid or a pager when Plaintiff had normal hearing in one ear, moderate hearing in the other, and failed to advise her or any other institution staff that his hearing impairment was having any negative impact on his ability to engage in prison activities. (*Id*.).

Because the undersigned concludes that Plaintiff has not met his burden of showing that he is disabled under the ADA, the Court need not reach the issue of whether Defendant Sanford intentionally violated Plaintiff's rights under the ADA.

REPORT AND RECOMMENDATION -10

**F.     Defendants Are Entitled to Qualified Immunity From Plaintiff's Damage Claims**

Defendants urge that they are, in any event, entitled to qualified immunity from the claims of Plaintiff. As the Court has determined that Plaintiff has failed to allege a deprivation of an actual constitutional right, the issue of qualified immunity need not be reached. *See Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

**G.     Plaintiff's Claims for Injunctive Relief Are Moot**

Generally, a prisoner's release or transfer from a prison will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action. *Preiser v. Newkirk*, 422 U.S. 395, 402-03, 95 S. Ct. 2330, 2334-35 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986).

This suit has not been certified as a class action and Plaintiff is no longer incarcerated. (*See* Dkt. # 21). Plaintiff's release from prison renders moot his ADA claims for injunctive relief. *See, e.g., Roque v. Armstrong*, 392 F. Supp.2d 382 (D. Conn. 2005) (inmate's release from prison rendered moot his claims for injunctive relief under the ADA, RA and § 1983).

Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted on Plaintiff's claim for injunctive relief.

### III. CONCLUSION

For the reasons stated above the Court should **GRANT** Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice. A proposed order accompanies this Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 11, 2007**, as noted in

REPORT AND RECOMMENDATION -11

the caption.

DATED this  12th  day of April, 2007.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION -12